JOURNAL ENTRY AND OPINION
{¶ 1} Jack Bezak appeals his conviction and sentence on one count of obstructing justice, in violation of R.C. 2921.32, handed down by the common pleas court, criminal division. After a review of the record presented and the arguments of the parties, we affirm the appellant's conviction, but remand the case for resentencing for the reasons set forth below.
 {¶ 2} Appellant's conviction arises from the fact that he allowed Michael Viccaro, a parolee who failed to report to his parole officer, to reside with him in a home on West 105th
Street. Appellant's son was also prosecuted in connection with Viccaro.
 {¶ 3} Appellant lived with his adult son[1] and the son's girlfriend in a third-floor apartment of a multi-unit building. On or about January 16, 2003, the police arrived to search the premises pursuant to a warrant for Viccaro. Appellant stated that he did not know Viccaro when presented with his photograph by police. Viccaro was arrested as he approached the house. Viccaro had several packets of heroin on him when he was arrested. Inside appellant's apartment, police located a cellular telephone bill in the name of Michael Viccaro and, on the wall of what is purported to be Viccaro's bedroom, a photo of a cemetery headstone bearing "Viccaro."
 {¶ 4} Viccaro testified that he used to live in the house, but that he could no longer afford it. The apartment had since been rented by the appellant and his family; they had agreed to allow Viccaro to leave his possessions in a back bedroom until he got settled somewhere else. Viccaro also testified that he goes by his middle name, "Dino," and that the appellant and his family know him only by this name, and they were unaware that there was an open warrant for his arrest.
 {¶ 5} Appellant's son's girlfriend testified that Viccaro did not reside with them on West 105th Street and that she was unaware he was a parole violator.
 {¶ 6} Appellant appeals his conviction and sentence and presents five assignments of error.
 {¶ 7} "I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Bezak was guilty of obstructing justice as charged."
 {¶ 8} In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court reexamined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph 2 of the syllabus.
 {¶ 10} More recently, in State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 11} "With respect to sufficiency of the evidence, "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed. 2d 652, 663, citing Jacksonv. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 12} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167,462 N.E.2d 407.
 {¶ 13} In the instant case, appellant was convicted of obstructing justice, pursuant to R.C. 2921.32(A)(5), which states in pertinent part:
 {¶ 14} "(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:
 {¶ 15} "* * *
 {¶ 16} "(5) Communicate false information to any person."
 {¶ 17} The oral misdirection of police officers in pursuit of suspected felons has been held to be a verbal act constituting obstructing official business and a violation of R.C.2921.32(A)(5). State v. Bailey (1994), 71 Ohio St.3d 443,644 N.E.2d 314; State v. Lazzaro (1996), 76 Ohio St.3d 261, 264;State v. Bolyard (1990), 68 Ohio App.3d 1, 3; State v. Gordon
(1983), 9 Ohio App.3d 184, 458 N.E.2d 1277.
 {¶ 18} Viewed in the light most favorable to the prosecution, the evidence presented is sufficient to sustain a conviction for obstruction of justice. The record indicates that when the subject of the search warrant was apprehended, the police officers were minutes away from leaving the premises due to the information they were given by the appellant. Viccaro's apprehension was thus a matter of luck. The appellant was warned several times that Viccaro was a wanted fugitive and that giving false information to the task force amounted to obstruction of justice. Finally, the discovery of Viccaro's personal items in the apartment of appellant, as discussed below, indicates that appellant had an ongoing relationship with Viccaro, even though he denied knowing Viccaro when questioned by police. Therefore, we find that there is competent, credible evidence to support the finding of guilt, and this assignment of error is overruled.
 {¶ 19} "II. The verdict was against the manifest weight of the evidence."
 {¶ 20} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. Instead, "the [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, citingTibbs v. Florida, (1982), 457 U.S. 31, 102 S.Ct. 2211,72 L.Ed.2d 752.
 {¶ 21} In the instant case, we cannot find that the jury lost its way. On the morning in question, officers from a multi-agency task force dedicated to recovering fugitives arrived at the home of the appellant to execute a search warrant for Michael Viccaro, who was in violation of his parole and wanted for escape, a felony, pursuant to R.C. 2921.34. The address is a multi-unit dwelling, and officers were told by a neighbor upon their arrival that Michael Viccaro lived on the third floor. When officers reached the third floor, they first approached Brian Bezak and then the appellant. Appellant was shown a photo of Viccaro by police and denied knowing him. Appellant was also asked by police if anyone else was living in the apartment besides himself and his family, and he responded in the negative.
 {¶ 22} Appellant's witnesses, however, testified that Viccaro frequented the home, but was merely a departing tenant of the apartment now rented by appellant and his family, and that they had no acquaintance with him past allowing him to store his things until he got settled in a new place. Viccaro, testifying on behalf of the appellant, stated that he was acquainted with the Bezaks, but that the appellant and his family knew him only as "Dino."
 {¶ 23} Police, however, found possessions, a recent cellular phone bill in the name of "Michael Viccaro," and Viccaro himself returning to the apartment with drugs on the morning that he was apprehended. Police also found a photo of a grave marker bearing the name "Viccaro" hanging on the wall in the room used by appellant as a bedroom.
 {¶ 24} Appellant was questioned several times during the officers' visit, and again denied knowing Michael Viccaro. However, Viccaro testified that he had been living, on and off, at the apartment for some time, that he had a key to the apartment, and that he had known the Bezaks for an extended period of time prior to his arrest. Further, he had spent the night prior to his arrest with the Bezaks. Viccaro also gave the police appellant's address as his own when he was being arrested.
 {¶ 25} That the jury did not believe appellant allowed someone to even temporarily reside with him and his family without knowing at least his last name is not unreasonable. The jury could have concluded that the appellant knew the real name of Viccaro and was attempting to mislead police by denying he knew the man, especially because testimony showed that Viccaro was originally acquainted with the Bezaks as a result of various prison stays. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212. Therefore, we cannot find that the verdict was contrary to the manifest weight of the evidence, and the appellant's second assignment of error is overruled.
 {¶ 26} "III. The trial court erred when it instructed the jury that failure to report to one's parole officer constituted the felonious crime of escape."
 {¶ 27} Prior to July 1, 1996, R.C. 2967.15 specifically exempted parole violators from new charges of escape for their failure to comply with the terms of their parole. Upon the enactment of Senate Bill 2 ("S.B. 2"), R.C. 2921.01(E) was amended to make parolees liable for new charges of escape upon violations of certain terms of their parole. A conflict between statutes was thus created because R.C. 2967.15 was not amended with respect to the exemption of parolees until March 17, 1998. Even with that amendment, a conflict remained with regard to parolees who were convicted of crimes prior to July 1, 1996, but committed acts constituting escape while on parole prior to the amendment of R.C. 2967.15 in 1998. This dichotomy was addressed in State v. Conyers (1999), 87 Ohio St.3d 246, which held that no parolees could be convicted of escape for such acts committed during the period of conflicting statutes (July 1, 1996 through March 17, 1998).
 {¶ 28} But what of acts of escape committed subsequent to the 1998 amendment by parolees who had been convicted for acts committed prior to July 1, 1996? This court considered that situation in State v. Thompson, supra. In Thompson, we held that the applicable statutes contained conflicting requirements and were so ambiguous as to require them to be construed against the state.
 {¶ 29} This court also considered a similar case, State v.Carpenter, Cuyahoga App. No. 82470, 2002-Ohio-4198. There, the trial court had dismissed the state's case where the defendant had been on parole for crimes committed on July 1, 1996, prior to the enactment of S.B. 2, and was subsequently indicted for escape in 2002 as a parole violator. The trial court's dismissal was upheld in Carpenter, which followed the Thompson decision regarding the status of parole violators. See, also, State v.Tuttle, Cuyahoga App. No. 80775, 2003-Ohio-419.
 {¶ 30} However, the Ohio Supreme Court recently reversed our decision in Thompson, supra, and determined in State v.Thompson (2004), 102 Ohio St.3d 287, 290 that a parolee who fails to report to his parole officer after March 17, 1998 may be prosecuted for escape under R.C. 2921.34 regardless of when his or her underlying crime was committed. "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." The Peerless Electric Co. v. Bowers (1955),164 Ohio St. 209, 210. Therefore, appellant's third assignment of error is overruled.
 {¶ 31} "IV. The trial court committed plain error when it permitted testimony about photographs where the photographs themselves were unavailable; alternatively, counsel was ineffective for not having objected to this testimony."
 {¶ 32} Appellant next argues that the trial court erred by permitting testimony regarding two photographs, one of Michael Viccaro and one of a tombstone bearing the name "Viccaro," without requiring the actual photos to be admitted into evidence. Evid.R. 1002, the Best Evidence Rule, reads:
 {¶ 33} "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."
 {¶ 34} Trial counsel failed to object to this testimony, therefore, we review it for plain error. To constitute plain error, the error must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Nolling, 98 Ohio St.3d 44,2002-Ohio-7044, 781 N.E.2d 88; State v. Waddell (1996),75 Ohio St.3d 163, 166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v.Phillips (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643.
 {¶ 35} First, testimony regarding the photographs was not admitted to prove the contents of said photographs. The officers who testified that they saw the tombstone photograph indicated that they used it to question appellant; the prosecution did not seek to elicit from the officers information to prove the content of the photographs. Therefore, the best evidence rule is not invoked in this case.
 {¶ 36} Further, even if the testimony cited by appellant was admitted in error, where the court erroneously admits evidence, but there is remaining overwhelming evidence of the defendant's guilt, the error is considered harmless. Crim.R. 52; State v.Bidinost, 71 Ohio St.3d 449, 464, 1994-Ohio-465, 644 N.E.2d 318. When there is no reasonable possibility that the jury would have acquitted the defendant had the evidence not been admitted, any error in admitting said evidence may be considered harmless. SeeState v. Brown (1992), 65 Ohio St.3d 483, 605 N.E.2d 46; Statev. Heyward (Sept. 14, 2000), Cuyahoga App. No. 76838. There was little dispute during the trial of this matter that the photographs to which the officers testified depicted Michael Viccaro and a headstone bearing the name "Viccaro." Therefore, introduction of the actual photographs into evidence would have made no difference in the outcome. Accordingly, we find that the trial court did not err in allowing this testimony.
 {¶ 37} Appellant also argues here that trial counsel's performance was ineffective because he failed to object to the testimony. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 38} Appellant's argument boils down to a second-guessing of trial counsel's trial strategies and tactics; an appellate court should not second-guess the appellant's own tactical decisions. State v. Thompson (1987), 33 Ohio St.3d 1, 11. Because we find that the trial court did not err in admitting the testimony in question, we cannot find that trial counsel's performance was flawed or deficient in failing to object to its admission. Therefore, appellant's fourth assignment of error is overruled.
 {¶ 39} "V. The post release control term must be vacated because it was not imposed at sentencing."
 {¶ 40} Both parties agree that R.C. 2929.19 requires that the appellant be advised at the sentencing phase of his case of the imposition of post-release control. The Ohio supreme Court, inWoods v. Telb (2000), 89 Ohio St.3d 504, held that the trial court must inform a defendant that post-release control is part of his/her sentence, either at sentencing or at the time of the plea hearing. The distinction between discretionary and mandatory post-release control is one without a difference with regard to the duty of the trial court to notify the offender at the sentencing hearing and to incorporate post-release control into its journal entry. State v. Jordan, 104 Ohio St.3d 21 at ¶ 22,2004-Ohio-6085. When a trial court fails to properly discharge its stautory duty with respect to postrelease control notification, the sentence must be vacated and the matter remanded for resentencing. Id. at ¶ 28.
 {¶ 41} Therefore, we find that appellant's fifth assignment of error has merit, and the case must be remanded for resentencing so that appellant may be advised that he is subject to post-release control.
Judgment affirmed as to the conviction and case remanded for resentencing.
This cause is affirmed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed. The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and McMonagle, J., concur.
[1] Brian Bezak was also convicted of obstruction of justice in lower court case number 43460, and his conviction was affirmed in CA 84103, 84104.