JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Gary Ervin appeals his conviction and sentence from the Cuyahoga County Court of Common Pleas. After reviewing the record and all pertinent law, we affirm his conviction, but vacate his sentence and remand the case for resentencing.
 {¶ 2} Ervin and his co-defendant, Aubrey Waller, were charged in a fifteen-count indictment; fourteen counts applied to Ervin. He was charged with one count of felony murder, three counts of kidnapping, one count of aggravated robbery, one count of grand theft motor vehicle, six counts of felonious assault, one count of possession of drugs, and one count of carrying a concealed weapon. Both pled not guilty and opted for a jury trial. Prior to trial, the count of possession of drugs was dismissed by the state.
 {¶ 3} At trial, the evidence revealed that Darnell Lester, the victim, was an FBI informant. Several years earlier, Lester was arrested in Cleveland for drug charges in New York. He became an FBI informant in New York City, but remained living in Cleveland. His "handler" was Special Agent Brian O'Rourke, who was stationed in New York City. Over the course of three years, Lester had worked several times for SA O'Rourke.
 {¶ 4} On December 22, 2003, Lester was in Cleveland driving a 1993 GMC Safari van, which was white in color. Lester had permission from a friend to borrow the van that night. Lester, along with four of his friends, Vernon Black, Andre Glasgow, Clifford Gillespie, and Antawan McPherson, drove to East 79th
and Cedar and stopped briefly at a store known as Easy Foods. Lester got out and spoke with someone; he got back in the van and left. After something was said to Lester, he turned the van around and went back to East 79th and Cedar; he parked at Mo's Deli across the street from Easy Foods. Again, only Lester got out of the vehicle. Black was in the front seat, and the other three were in the back of the van, which had no seats.
 {¶ 5} Black, Glasgow, and McPherson testified that a scuffle ensued on the driver's side of the van where there were no windows. They felt the van rocking and heard the scuffle. Black testified that Ervin opened the driver's side door, pointed a gun at Black, and told him to get out. Black got out and ran. McPherson testified that the sliding van door opened, he saw chrome and guns, and he heard someone tell them to get out. In the meantime, a group of people were trying to shove Lester into the van. Glasgow testified that Lester was scuffed up and unconscious. Glasgow was able to get out; however, the van drove off with McPherson and Gillespie still inside. McPherson testified that Lester was in the middle of the van on the floor "tussling" with someone. McPherson said he kept his head down because he was scared. At some point, he and Gillespie were let out of the van. McPherson never saw Lester alive again.
 {¶ 6} Black testified that later that evening Waller drove by in the white van and asked Black where Lester's money was and if Black knew who called the police. Black did not know the answers, and Waller drove away.
 {¶ 7} Rebecca Ward testified that she saw the commotion at Mo's Deli and stopped across the street to watch. Ward saw a crowd of people around Lester's van who were arguing. She saw Ervin go to the driver's side door and saw Waller open the sliding door, pointing a gun at whoever was inside. She saw two people get out of the van, and she saw the van drive off.
 {¶ 8} Lester's friends informed Lester's family that Lester had been kidnapped by Ervin and Waller. Lester's mother repeatedly attempted to contact Lester on his cell phone. She was never able to speak to him. "Gino," who answered, would not let her talk to Lester. Gino was later identified as Ervin.
 {¶ 9} Lester, however, was allowed to use his cell phone to contact his "dealer." Lester called SA O'Rourke and talked to him as if SA O'Rourke was a drug dealer. Lester told SA O'Rourke that he needed a "three." SA O'Rourke at first could not understand what was going on, because Lester had never talked to him in street lingo before. Then SA O'Rourke started to question Lester in a manner that allowed Lester to answer yes or no. SA O'Rourke figured out that Lester had been kidnapped and that his kidnappers were demanding a ransom of either drugs or money.
 {¶ 10} SA O'Rourke called the FBI office in Cleveland. They mobilized their SWAT team and tried to track Lester by using cell phone signals from Lester's calls to New York. There were 36 calls made between Lester and SA O'Rourke on the evening Lester died. Lester and SA O'Rourke were attempting to set up an exchange between the kidnappers and Lester's "dealer." SA O'Rourke was able to relay all pertinent information to the FBI SWAT team in Cleveland. The exchange was to be made at the Rally's parking lot at 81st and Euclid Avenue. The kidnappers were driving a green GMC Jimmy.
 {¶ 11} The FBI SWAT team met before the scheduled exchange to go over their plan. All agents were dressed in black with bulletproof vests that had "FBI" across the front in large white letters. All vehicles were equipped with blue strobe lights. The plan was to have a decoy vehicle, with two members of the SWAT team, in the Rally's lot early so the kidnappers would park next to the vehicle, and then the other SWAT vehicles could then converge on the Jimmy and box it in. The kidnappers arrived before the decoy vehicle could get there.
 {¶ 12} The FBI SWAT team converged on the Jimmy which was parked in the back of the Rally's lot. They were able to box in the Jimmy with their vehicles. One of the agents, Todd Werth, got out of the vehicle he was in and moved forward to protect his driver and effect an arrest. In the meantime, Ervin, the driver of the Jimmy, tried to break containment by ramming his vehicle into the FBI vehicles that were surrounding him. Ervin was able to break containment and drove straight at SA Werth. SA Werth fired three shots at the driver of the vehicle while attempting to get out of the way of the Jimmy. One shot hit Ervin in the face, one hit him in the hand, and one hit Lester, who was in the passenger seat, in the chest.
 {¶ 13} Ervin drove the Jimmy out of the parking lot and crashed into a fence across the street. An FBI vehicle pulled behind the Jimmy. Waller opened the back driver's side door and started shooting at the FBI vehicle with a 9-mm handgun. SA Robert McBride, the front-seat passenger, fired one round through the FBI vehicle's windshield at the Jimmy. Waller got off two shots, and then his gun jammed. He threw the gun into the back of the Jimmy and surrendered.
 {¶ 14} Ervin and Waller were arrested. Ervin suffered a gunshot wound to his face and his hand. Lester died as a result of a gunshot wound to the left chest.
 {¶ 15} Ervin and Waller were each found guilty of felony murder, one count of kidnapping, aggravated robbery, grand theft motor vehicle, six counts of felonious assault, and carrying a concealed weapon.
 {¶ 16} Ervin appeals, advancing four assignments of error for our review. Ervin's first and second assignments of error state the following:
 {¶ 17} "The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant."
 {¶ 18} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} Under both assignments of error, Ervin argues that the state's witnesses lacked credibility and that he was not the cause of Lester's death. Ervin contends that the evidence was insufficient to sustain his convictions and are against the manifest weight of the evidence.
 {¶ 20} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 22} Ervin argues that he was not the cause of Lester's death. He argues that it was the FBI's fault that Lester died.
 {¶ 23} Ervin was charged with murder in violation of R.C.2903.02(B). The indictment read, in pertinent part, that Ervin "did cause the death of Darnell Lester, as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, to-wit: Kidnapping R.C. 2905.01 and/or Aggravated Robbery R.C. 2911.01
and/or Felonious Assault R.C. 2903.11 * * *."
 {¶ 24} The jury charge stated, in pertinent part, the following: "Cause. The State charges that the act or failure to act of either one or both of the Defendants caused the death of Darnell Lester. Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the death of a person, and without which it would not have occurred."Natural consequences. The Defendants' responsibility is not limited to the immediate or most obvious result of the Defendants' act or failure to act. The Defendants are also responsible for the natural and foreseeable consequences that follow, in the ordinary course of events, from the act or failure to act."Other causes not a defense. There may be one or more causes of an event. However, if a defendant's act was one cause, then the existence of other causes is not a defense."Intervening causes. The Defendants are responsible for the natural consequences of the Defendants' unlawful act or failure to act, even though death was also caused by the intervening act or failure to act of another person or agency."
 {¶ 25} "Under the `proximate cause theory,' it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. [A] Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the `proximate result' of Defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience." State v. Dixon,
Montgomery App. No. 18582, 2002-Ohio-541, citing Moore v.Wyrick (C.A. 8, 1985), 766 F.2d 1253; State v. Chambers
(1977), 53 Ohio App.2d 266; State v. Bumgardner, (August 21, 1998) Greene App. No. 97-CA-103; State v. Lovelace (1999),137 Ohio App.3d 206. In this case, the evidence revealed that there was more than one cause of Lester's death. The intervening act of SA Werth shooting at the driver of the vehicle was the most immediate and obvious cause of Lester's death, but not the sole and exclusive cause. Had Ervin and Waller not kidnapped Lester and demanded a sum of money or drugs for his return, Lester would not have been shot. Had Ervin surrendered at the scheduled drop-off when the FBI SWAT team converged on his vehicle and had Ervin not driven his vehicle at SA Werth, Lester, the front-seat passenger, would not have been shot and killed. By kidnapping Lester, attempting to avoid apprehension, and driving at SA Werth, Ervin and Waller set in motion a chain of events in which one of the reasonably foreseeable consequences was the death of Lester. Thus, Ervin and Waller's conduct was a proximate cause of Lester's death for which Ervin is criminally responsible. SeeState v. Dixon, supra (Dixon's felony murder conviction upheld when Dixon's accomplice was shot and killed by their intended robbery victim.)
 {¶ 26} Ervin also argues that some of the state's witnesses were not credible because they had criminal records. He argues that the testimony of the state's witnesses cannot be relied on as sufficient evidence to sustain a conviction.
 {¶ 27} It is well established that an appellate court cannot evaluate the credibility of witnesses on a review for evidentiary sufficiency. State v. Yarbrough, 95 Ohio St.3d 227, 240,2002-Ohio-2126; see, also, State v. Murphy (2001),91 Ohio St.3d 516, 543; State v. Waddy (1992), 63 Ohio St.3d 424, 430;State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The weight to be given the evidence and credibility of the witnesses are primarily for the trier of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 79-80. Furthermore, the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. State v. Bezak, Cuyahoga App. No. 84008, 2004-Ohio-6623. Thus, in reviewing the legal sufficiency of evidence to support a jury verdict, it is the minds of the jurors rather than a reviewing court that must be convinced. Thomas, supra, citing State v. Petro (1947),148 Ohio St. 473, 501-502; State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 28} In addition, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Ragland, Franklin App. No. 04AP-829, 2005-Ohio-4639. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. Id. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. Id.
 {¶ 29} Here, Ervin complains that Black, Ward, Glasgow, and McPherson were not credible witnesses. Nevertheless, their testimony, if believed, was sufficient to establish all the elements of the kidnapping, aggravated robbery, and grand theft motor vehicle charges beyond a reasonable doubt.
 {¶ 30} Furthermore, a review of the record reveals that all four witnesses' testimony was substantially the same, with only minor inconsistencies, and their testimony was consistent with the physical evidence. Therefore, we cannot say that Ervin's convictions were against the manifest weight of the evidence either.
 {¶ 31} Accordingly, Ervin's first and second assignments of error are overruled.
 {¶ 32} Ervin's third and fourth assignments of error state as follows:
 {¶ 33} "The trial court erred by ordering appellant to serve a consecutive sentence."
 {¶ 34} "The trial court erred when it sentenced appellant to a maximum sentence."
 {¶ 35} In Ervin's third and fourth assignments of error, he argues that the trial court erred by ordering maximum and consecutive sentences without making the appropriate findings under R.C. 2929.14(B), (C), and (E)(4), 2929.19(B)(2), and 2929.41(A). Ervin acknowledges State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, which was decided after he filed his notice of appeal but before he filed his appellate brief; however, Ervin argues that Foster does not apply to him under the principles prohibiting ex post facto laws.
 {¶ 36} We reject Ervin's argument and apply Foster to his case. "As the Supreme Court mandated in Booker, we must apply [Foster] to all cases on direct review." Id. at 31 (internal citations omitted). In this case, the notice of appeal was filed on November 25, 2005, and Foster was decided on February 27, 2006; therefore, Ervin's case was pending as contemplated by theFoster court. See State v. Stokes, Cuyahoga App. No. 87319,2006-Ohio-3966.
 {¶ 37} In Foster, the Ohio Supreme Court declared that several provisions of S.B. 2 violated Blakely v. Washington
(2004), 542 U.S. 296, and severed all offending sections, which included the sections under which Ervin was sentenced. A defendant who was sentenced under the unconstitutional and now void statutory provisions must be resentenced. Foster, supra at ¶ 103-106.
 {¶ 38} Since the trial court relied on unconstitutional provisions when it imposed Ervin's maximum and consecutive sentences, his sentences are vacated, and the matter is remanded for resentencing in accordance with Foster.
 {¶ 39} We further find Ervin's argument that Foster
violates his right against ex post facto legislation to be premature. This issue is not ripe for our review, because Ervin has not yet been sentenced under Foster. See State v. Reed,
Cuyahoga App. No. 87290, 2006-Ohio-3978; State v. Rady, Lake App. No. 2006-L-012, 2006-Ohio-3434; State v. Pitts, Allen App. No. 01-06-02, 2006-Ohio-2796; State v. Lathan, Lucas App. No. L-03-1188, 2006-Ohio-2490; State v. Sanchez, Defiance App. No. 4-05-47; 2006-Ohio-2141; State v. McKercher, Allen App. No. 1-05-83, 2006-Ohio-1772.
 {¶ 40} Accordingly, Ervin's third and fourth assignments of error are sustained in part and overruled in part.
Judgment affirmed in part; sentence vacated, and case remanded for resentencing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. Sentence vacated and case remanded for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Corrigan, J., Concur.