[Cite as *State v. Burt*, 2013-Ohio-3525.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99097**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FREDERICK BURT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-558512

**BEFORE:** Kilbane, J., Jones, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Daniel A. Cleary
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Frederick Burt ("Burt"), appeals his convictions and sentence. For the reasons set forth below, we affirm.

{¶2} In January 2012, Burt was charged in a 17-count indictment resulting from a home invasion. Count 1 charged him with felony murder. Count 2 charged him with aggravated burglary. Counts 3-9 charged him with aggravated robbery. Counts 10-16 charged him with kidnapping. Each of Counts 1-16 carried one- and three-year firearm specifications. Count 17 charged him with having a weapon while under disability. The matter proceeded to a jury trial in August 2012, at which the following evidence was adduced.[1]

{¶3} On the evening of January 6, 2012, Burt, age 20, and his younger brother, C.W., age 17, went to the home of Joshua Thomas ("Thomas") and Clinton Belcher ("Belcher") on Waterbury Avenue in Lakewood, Ohio to conduct a burglary and robbery. Thomas testified that, on that evening, he was "chill'n" with Ronald Perry ("Perry"), John Chase ("Chase"), Andre Daniel ("Daniel"), Heather Tuel ("Tuel"), Deon Allen ("Allen"), and Alex Sifford ("Sifford"). Thomas and his guests were in the living room and Belcher was in the shower. Thomas testified that he opened the front door to leave, and two men, later identified as C.W. and Burt, entered the house. C.W. was wearing a hoodie and had a gun in his hand. He had his gun pointed at Thomas and everyone else in the living room. Burt had a bottle in his hand and was using it as a weapon, ordering

---

[1]Prior to the start of trial, Burt elected to have Count 17 tried to the court.

Thomas, Perry, Daniel, Tuel, and Allen to get down and empty their pockets. Thomas testified that Chase ran out the back door when C.W. and Burt entered the home. Burt took Perry's wallet, approximately $40 from Sifford, and Sifford's coat. Burt ordered Thomas to give him his gold earrings. As Thomas was unscrewing his earrings, Allen shot C.W. in the head. C.W. fell to the floor, dying from the gunshot wound. Everyone then ran out of the house. Tuel called 911, and Sifford and Allen chased after Burt. Sifford testified that Allen shot Burt in the leg. Burt ran to a neighbor's back porch, where the police found him.

{¶4} The Lakewood police eventually arrested Burt in connection with the homicide. When Burt was first arrested, he stated that he did not want to make a statement and wanted a lawyer. Several hours later, however, Burt indicated, through the jailer, that he wanted to speak with the police. Burt was read his *Miranda* rights and signed an acknowledgment form of those rights before speaking with Detective Terry Miller ("Detective Miller"). Burt gave Detective Miller a two-hour video-taped statement, which was played for the jury. In the video, Burt admitted to his participation in the home invasion. Specifically, he admitted that he wanted Thomas's earrings.

{¶5} At the conclusion of trial, the jury found Burt guilty of all charges and accompanying specifications. The trial court also found him guilty of having a weapon while under disability. For purposes of sentencing, the trial court merged each of the one-year firearm specifications into the three-year firearm specifications, and ordered that each of three-year firearm specifications be served concurrently. The trial court also

merged Counts 10-16 (the kidnapping charges) into Counts 3-9 (the aggravated robbery charges) for a single conviction per victim. The court sentenced Burt to 15 years to life on Count 1, with an additional three-years in prison for the firearm specifications. The court ordered that the three-year firearm specifications be served prior to and consecutive to the base charge of 15 years. The court sentenced Burt to eight years in prison on each of Counts 2-9, with an additional three years on each count for the firearm specifications. The court also sentenced Burt to 36 months in prison on Count 17. The court ordered that Counts 2-9 and Count 17 be served concurrent to each other but consecutive to Count 1, for a total sentence of 26 years to life in prison.

{¶6} Burt now appeals, raising the following three assignments of error for review.

### Assignment of Error One

[Burt] was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution.

### Assignment of Error Two

The jury found, against the manifest weight of the evidence, that [Burt] proximately caused the death of his brother.

### Assignment of Error Three

The trial court erred by imposing consecutive sentences.

### Ineffective Assistance of Counsel

{¶7} In order to substantiate a claim for ineffective assistance of counsel, the defendant must demonstrate "(1) that counsel's performance fell below an objective

standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶8} This court must presume that a licensed attorney is competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). In evaluating whether the defendant has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. To demonstrate that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

**{¶9}** Burt argues that defense counsel was ineffective for failing to: (1) file a motion to suppress his video-taped confession; (2) actively engage in plea negotiations; and (3) argue the issue of proximate cause with respect to C.W.'s death.

<u>Motion to Suppress</u>

**{¶10}** Burt first argues counsel should have filed a motion to suppress his video-taped confession because "the statements elicited from him did not constitute a voluntary act." Burt argues that his confession was coerced by Detective Miller. He claims he "broke down" and admitted his involvement in the crime after two hours of intense interrogation by a seasoned police veteran, Detective Miller.

**{¶11}** The "'failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d at 389, 2000-Ohio-448, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). To establish ineffective assistance of counsel for failure to file a motion to suppress, the defendant must prove that there was a basis to suppress the evidence in question. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35. Thus, we must determine if a motion to suppress Burt's confession would have been successful.

**{¶12}** "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of

threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978); *see also State v. Bays*, 87 Ohio St.3d 15, 22, 1999-Ohio-216, 716 N.E.2d 1126.

{¶13} Based on the totality of the circumstances in the instant case, we cannot conclude that Burt's confession was the product of coercion. Rather, the record reveals that Burt initiated the interview with Detective Miller. Burt had invoked his right to remain silent and was taken back to his jail cell when he later informed the jailer that he wanted to speak with the detectives. Burt, who was 20 years old at the time, was read his *Miranda* rights and signed an acknowledgment form of those rights before speaking with Detective Miller. In reviewing the video-taped statement, the atmosphere appeared to be noncoercive. Detective Miller simply questioned Burt about the fabricated stories he initially told him. There was no physical deprivation or mistreatment by Detective Miller. Based on the foregoing, the record demonstrates that Burt voluntarily confessed to Detective Miller.

{¶14} Having found that Burt's confession was voluntary, we conclude that a motion to suppress the confession would not have been successful. Thus, defense counsel's performance was not deficient in this respect.

<u>Plea Negotiations</u>

{¶15} Second, Burt argues that he was denied effective assistance of counsel when defense counsel failed to actively engage in plea negotiations in light of his confession.

A review of the record, however, reveals that Burt did not want to engage in any plea negotiations. Prior to trial, the trial court held the following discussion with the prosecutor, defense counsel, and Burt on the record:

> [STATE:] And finally, Your Honor, just given the new case law from the U.S. Supreme Court, it's my understanding at this point there had not been any meaningful plea negotiations done in this case. So at this point, it's my understanding that the defendant does not want to plea. And given the case law, I'd just ask the Court to make sure that's okay. It's not that we're offering a plea, it's just that it hasn't been approached to us at this point.
>
> * * *
>
> So we just want to know that if there will be plea negotiations, we don't want to do this Monday. Once, we sit down, there are no plea negotiations.
>
> * * *
>
> [DEFENSE COUNSEL:] There have been no formal demands for a plea bargain, Your Honor, that is true. However, I don't think I'm talking out of turn, we have discussed everything from the possibility of a manslaughter charge in combination with some sort of robbery. We have broached the fact that maybe we could get to an agreed time, but these have been all open-ended discussions, Your Honor. Because I also would like the record to reflect that my client, since the first day I met him, and in all the time he's been incarcerated, has maintained his innocence and is patiently waiting for his day in court in hopes of clearing his name.
>
> That being said, the only reason why their hasn't been an offer, the only reason there hasn't been more serious plea negotiations is the fact that I would never disingenuously engage the Prosecutor's office into believing that we could resolve this case knowing full well that after having face to face conversations with my client, he does not want to plead to anything.
>
> [COURT:] Mr. Burt, let me ask you. Is that correct, though, in terms of your willingness to consider any type of plea offer in this case? You wish to go to trial; is that correct?
>
> [BURT:] Yes.

[COURT:] All right. Then that's fine. I just want to make sure that I heard it from you, too. Okay.

{¶16} Based on the foregoing, it is clear that Burt, not defense counsel, refused to engage in plea negotiations. Therefore, defense counsel's performance was not deficient.

## Proximate Cause

{¶17} Third, Burt argues defense counsel was ineffective for failing to argue that his participation in the aggravated robbery and aggravated burglary was not the proximate cause of C.W.'s death. Burt contends that defense counsel should have urged the jury to ignore the confession because it was coerced and unreliable.

> In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case and it must give great deference to counsel's performance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Trial tactics and strategies do not constitute a denial of effective assistance of counsel.

*State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶18} Here, as discussed above, because the confession would not have been suppressed, defense counsel chose to argue that the confession was coerced by the police. We decline to find that this trial tactic constituted ineffective assistance of counsel.

{¶19} Accordingly, the first assignment of error is overruled.

## Manifest Weight of the Evidence

**{¶20}** In the second assignment of error, Burt argues that his murder conviction is against the manifest weight of the evidence. In reviewing a manifest weight challenge, the Ohio Supreme Court in *State v. C.W.*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶21}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

**{¶22}** Burt was convicted of murder in violation of R.C. 2903.02(B), which provides that: "[n]o person shall cause the death of another as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C. 2903.03 or R.C. 2903.04.]" He argues that the jury "lost its way" because Burt cannot be held criminally liable for his brother's death when the shooting was not reasonably foreseeable under the circumstances. Burt argues

the intervening act of Allen shooting C.W. caused C.W.'s death. As a result, it was unforeseeable for Burt to anticipate that Allen would murder his brother. The fact that C.W.'s death was not part of the plan, however, does not prevent the jury from convicting Burt for his brother's death.

{¶23} In *State v. Muntaser*, 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, ¶ 26-27, *discretionary appeal not allowed*, 106 Ohio St.3d 1416, 2005-Ohio-3154, 830 N.E.2d 348, we addressed proximate result and explained:

> It is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. A defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience. *Id.*; *State v. Bumgardner*, Greene App. No. 97-CA-103, 1998 Ohio App. LEXIS 3856; *State v. Lovelace* (1999), 137 Ohio App.3d 206, 738 N.E.2d 418.
>
> Thus, a defendant may be held criminally liable for the unintended death that results from the commission of a first or second degree felony.

{¶24} *Id.*, quoting *State v. Dixon*, 2d Dist. Montgomery No. 18582, 2002-Ohio-541. *See also State v. Ervin*, 8th Dist. Cuyahoga No. 87333, 2006-Ohio-4498. We further explained that

> for criminal conduct to constitute the "proximate cause" of a result, the conduct must have (1) caused the result, in that but for the conduct the result would not have occurred, and (2) the result must have been foreseeable. *State v. Lovelace* (1999), 137 Ohio App.3d 206, 738 N.E.2d 418. Foreseeability is determined from the perspective of what the defendant knew or should have known, when viewed in light of ordinary

experience.  *Id.*  It is not necessary that the defendant be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by the defendant. *Id.*; *State v. Losey* (1985), 23 Ohio App.3d 93, 23 Ohio B. 158, 491 N.E.2d 379.

*Id.* at ¶ 38.

{¶25} Here, C.W.'s death would not have occurred when it did, but for Burt's conduct, acting in concert with C.W., in robbing and burglarizing Thomas and Belcher's home at gunpoint.  The shooting that killed C.W. was within the scope of the risk created by Burt and C.W. when they invaded the Waterbury Avenue residence at gunpoint.  Burt was an active participant during the robbery and knew that C.W. used a gun to facilitate the robbery.  When C.W. and Burt entered the home, C.W. already had his gun drawn and pointed it at everyone in the living room.  Burt then picked up a bottle and used it as a weapon, ordering everyone to get down and empty their pockets.  As the *Dixon* court stated:

The natural inclination of persons present during a robbery to forcibly defend themselves, their family and friends, and their property from theft and criminal aggression is a primal human instinct.  Every robber or burglar knows when he attempts his crime that he is inviting dangerous resistance.  Add to this highly charged atmosphere the use of a firearm to facilitate the robbery, and the risk of serious physical harm or death to any person present, be it the intended victims, bystanders, or the wrongdoers themselves, becomes highly foreseeable.  (Citations omitted.)

*Id.* at \*19.  (Dixon's felony murder conviction was upheld on appeal when Dixon's accomplice was shot and killed by their robbery victim.)

{¶26} Based on the facts of the instant case, C.W.'s death was a logical and reasonably foreseeable consequence of the aggravated robbery committed by Burt and C.W.   Thus, Burt's conduct was the proximate cause of C.W.'s death for which he is criminally responsible.   Accordingly, we cannot say the jury clearly "lost its way" and created such a manifest miscarriage of justice that Burt's conviction must be reversed and a new trial ordered.

{¶27} The second assignment of error is overruled.

### Sentence

{¶28} In the third assignment of error, Burt challenges his sentence.  He argues that the trial court erred when it ordered that the aggravated robbery and aggravated burglary charges be served consecutive to the murder charge for two reasons:  (1) these crimes were committed with the same animus, and (2) the sentence was contrary to law.  Burt also challenges the proportionality of his sentence, arguing that "there was nothing in the record to distinguish [Burt] from others who committed the same offense."

### Merger

{¶29} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court redefined the test for determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25.[2]  The *Johnson*

---

²R.C. 2941.25 governs allied offenses and provides:

court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other.

{¶30} The *Johnson* court held that rather than compare the elements of the crimes in the abstract, courts must consider the defendant's conduct. *Id*. at syllabus. The *Johnson* court found:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * *
>
> If multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State*] *v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50, (Lanzinger, J., dissenting).
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed

---

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id.* at ¶ 48-50.

**{¶31}** Burt argues that his convictions should merge because he could not have been found guilty of murder under R.C. 2903.02(B) without also being found guilty of aggravated robbery or aggravated burglary. He contends that this statute requires the commission of either aggravated robbery or aggravated burglary in order to obtain a murder conviction. This court, however, addressed an analogous situation in *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 121, *discretionary appeal not allowed*, 135 Ohio St.3d 1416, 2013-Ohio-1622, 986 N.E.2d 31, and found that these crimes are not allied offenses. We explained that

> the same reasoning [in *Johnson*] applies to determine that the offenses at issue are not allied and do not merge for the purpose of sentencing. At the August 24, 2009 sentencing hearing, the court found that "defendant went into this home to commit an aggravated burglary, but his intent * * * changed as he encountered the victim and, therefore, * * * both the aggravated robbery and the aggravated burglary are crimes of a separate animus." *See*, *e.g.*, *State v. Keene*, 81 Ohio St.3d 646, 668, 1998-Ohio-342, 693 N.E.2d 246 (1998) ("felony-murder under R.C. 2903.01(B) is not an allied offense of similar import to the underlying felony"); *State v. Allen*, 8th Dist. No. 92482, 2010-Ohio-9, ¶ 69 (felony murder and aggravated robbery are not allied offenses because one requires the death of a person and the other does not).

*Id.* at ¶ 121.

**{¶32}** Here, the facts demonstrate that Burt and C.W. entered the Waterbury Avenue residence with the intent to rob the occupants in the home. C.W. had his gun drawn. C.W. was shot by one of the victims during the robbery. This conduct resulted in the commission of three distinct offenses committed separately and with a separate

animus as to each. As a result, these offenses do not merge for the purposes of sentencing.

Consecutive Sentence

{¶33} Recently, this court addressed the standard of review used by appellate courts when reviewing challenges to the imposition of consecutive sentences. *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891. In *Venes*, we held that the standard of review set forth by the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, was no longer valid. We stated:

> In [*Kalish*], the supreme court considered the relevant standard of review in the post-*Foster* era in which the findings necessary to impose consecutive sentences under former R.C. 2929.14(E)(4) had been declared unconstitutional. A plurality of the court held that R.C. 2953.08(G)(2) was inapplicable because it expressly related to "findings" that had been abrogated as unconstitutional. Instead, the plurality set forth the following method of reviewing criminal sentences: (1) is the sentence contrary to law and (2) if not, was it an abuse of discretion. *Id.* at ¶ 14-19.
>
> *Kalish*, as is any plurality opinion, is of "questionable precedential value." *See Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). Nevertheless, panels of this court have found it persuasive, at least insofar as it was applied to sentencing in the post-*Foster* era. *See, e.g., State v. Martinez*, 8th Dist. No. 96222, 2011-Ohio-5832, ¶ 6, fn. 1.
>
> The post-*Foster* era ended with the enactment of H.B. 86 and the revival of statutory findings necessary for imposing consecutive sentences under R.C. 2929.14(C)(4). By reviving the requirement for findings as a predicate for imposing consecutives, the ground offered by *Kalish* for rejecting the standard of review set forth in former R.C. 2953.08 — that it could not stand as a standard of review for a statute that improperly required findings of fact before imposing consecutive sentences — was nullified. With the basis for the decision in *Kalish* no longer valid, and given that *Kalish* had questionable precedential value in any event, we see no viable reasoning for continuing to apply the standard of review used in that case. Henceforth,

> we review consecutive sentences using the standard of review set forth in R.C. 2953.08.

*Id.* at ¶ 8-10.

**{¶34}** R.C. 2953.08(G)(2) provides two bases for a reviewing court to overturn the imposition of consecutive sentences: the sentence is "otherwise contrary to law," or the reviewing court clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4).

**{¶35}** R.C. 2929.14(C)(4) now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find the sentence is necessary to protect the public from future crime or to punish the offender. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the trial court must find that at least one of the following applies: (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.* at 2929.14(C)(4)(a)-(c).

**{¶36}** In the instant case, Burt argues that there is nothing in the record to "say that his conduct was so serious and unusual to warrant the imposition of consecutive sentences," noting that he was not the shooter. The trial court is not required to use "'talismanic words to comply with the guidelines and factors for sentencing.'" *State v. Goins*, 8th Dist. Cuyahoga No. 98256, 2013-Ohio-263, ¶ 10, quoting *State v. Brewer*, 1st Dist. Hamilton No. C-000148, 2000 Ohio App. LEXIS 5455 (Nov. 24, 2000). It must, however, be clear from the record that the trial court actually made the findings required by statute. *Id.*, citing *State v. Pierson*, 1st Dist. Hamilton No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 1999-Ohio-110, 715 N.E.2d 131.

**{¶37}** Here, a review of the record reveals that the court did engage in the required analysis and selected the appropriate statutory criteria prior to imposing consecutive sentences. The trial court satisfied the first and second requirements under R.C. 2929.14(C)(4) when it found that consecutive sentences were needed to protect the public and for punishment purposes, and that the consecutive nature of the sentences are not disproportionate to the seriousness of Burt's conduct and the danger he poses to the public. Lastly, the trial court satisfied the third and final requirement of R.C. 2929.14(C)(4) when it noted that it was imposing a consecutive sentence because Burt

committed the current offense while on community control sanctions in two other cases.

The trial court stated:

> The court will, however, impose those, that eight-year concurrent sentence consecutive to the term imposed in Count 1. That is because the court does specifically find that the offense was committed while [Burt] was on the sanction of community control in the two other cases, that the harm caused in this case obviously, the loss of life, was great or unusual, and the court does find that consecutive sentence are necessary in order to fulfill the purposes and principles of felony sentencing and they are not disproportionate to the seriousness of the offender's conduct and the danger to the public and consecutive sentences in this case are necessary to fulfill the purposes and principles of sentencing under [R.C. 2929.11.]

**{¶38}** Based on the foregoing, we conclude that the trial court engaged in the required analysis pursuant to R.C. 2929.14(C)(4) and a consecutive sentence is appropriate.

**{¶39}** With respect to Burt's proportionality argument, this court has previously found that in order to support a contention that a sentence is disproportionate to sentences imposed upon other offenders, the defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal. *State v. Edwards*, 8th Dist. Cuyahoga No. 89181, 2007-Ohio-6068; *State v. Lang*, 8th Dist. Cuyahoga No. 92099, 2010-Ohio-433, *discretionary appeal not allowed,* 126 Ohio St.3d 1545, 2010-Ohio-3855, 932 N.E.2d 340; *State v. Cooper*, 8th Dist. Cuyahoga No. 93308, 2010-Ohio-1983. A review of the record in the instant case reveals that defense counsel did not raise the issue of proportionality at the sentencing hearing. Nor did he present evidence as to what a "proportionate sentence" might be. Thus, he has not preserved the issue for appeal.

**{¶40}** Accordingly, the third assignment of error is overruled.

**{¶41}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR