OPINION
{¶ 1} Kenneth Hall is appealing from his conviction of complicity in murder, aggravated burglary, aggravated robbery, and felonious assault with an accompanying gun specification. He assigns a single error for our consideration:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGEMENT [sic] AGAINST THE APPELLANT WHEN THE EVIDENCE [WAS] INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 2 
 {¶ 2} Complicity is defined by R.C. 2923.03(A) as follows:
 No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense;
 (2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 (4) Cause an innocent or irresponsible person to commit the offense.
 {¶ 3} In R.C. 2901.22, the Ohio Revised Code defines four culpable mental states for criminal offenses. The culpable mental states are purposely, knowingly, recklessly, and negligently.
 {¶ 4} Murder is defined by R.C. 2903.02(A) and (B):
 (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.
 (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
 {¶ 5} As a result of the enactment of R.C. 2903.02(B), a person who purposely aids or abets someone else in the commission of an offense of violence which is a felony of the first or second degree can be found guilty of murder, regardless of whether or not the person had a purpose to kill. Aggravated robbery and aggravated burglary are both offenses of violence that are felonies of the first degree. Felonious assault is an offense of violence which is a felony of the second degree.
 {¶ 6} In the present case, the evidence clearly shows that two men robbed and killed Franklin Messer, Jr., in his residence. Messer's wife, Loria Kendrick, was also shot *Page 3 
during the robbery. Thus, the two men who entered the Messer residence, shot Messer and his wife, killed Messer and robbed them, were principal offenders in the offenses of murder, aggravated robbery, aggravated burglary, and felonious assault. As to those two men, gun specifications applied to their offenses.
 {¶ 7} Kenneth Hall was not one of the two men who entered the Messer residence. The issues at trial were: 1) whether Hall purposely aided or abetted the actual robberies; and 2) whether Hall's activity made him subject to a sentence amplification as a result of the use of a firearm in the offenses. See generally R.C. 2929.14(D)(1)(a).
 {¶ 8} The testimony at trial included the testimony of Jeffery Matney, who saw the two robbers running away from Messer's house. Matney testified that he heard one of the two men say "I think I killed him," apparently referring to Messer. (Tr. 184.) The two robbers got into the passenger side of a four-door blue or gray car which seemed to be waiting for them. The car immediately pulled away from the curb, did a U-turn and left the area. Id.
 {¶ 9} Noah Brown testified that he was one of the robbers. Brown had agreed to a plea bargain under the terms of which he pled to a reduced set of charges and received a sentence of 20 years of incarceration. Part of Brown's plea bargain was a requirement that he testify against Kenneth Hall at Hall's trial. Brown identified the second robber as Tyy Blake, a friend who lived with Brown.
 {¶ 10} Brown testified that Blake and Kenneth Hall came to Brown's residence around noon on the day of the robbery. The three discussed robbing Messer, a person Brown had not known before. Messer was known as a local drug dealer who likely had both cash and pills to be stolen. *Page 4 
 {¶ 11} The three agreed that Blake and Brown would do the actual robbery while Hall waited in the getaway car. Blake had the only firearm and was the person who killed Messer and shot Messer's wife.
 {¶ 12} After Messer was shot, Brown riffled his pockets looking for cash and/or pills. Blake grabbed Messer's gun. Brown and Blake then ran to Hall's car. Hall drove them to Brown's residence where the three men divided up the proceeds of the robbery.
 {¶ 13} Tyy Blake also testified at Hall's trial as the result of Blake's own plea bargain. Blake knew Hall as a result of working with him and as a result of their common involvement in illegal drugs. Blake did not know Messer personally, but knew Hall had a source for acquiring prescription drugs illegally.
 {¶ 14} On the day of the robbery, Blake was involved in selling some Vicodin to Messer through Hall. After the sale, Blake and Hall discussed robbing Messer. The two men then went and picked up Brown to help Blake do the robbery.
 {¶ 15} After getting gas for Hall's car, Hall dropped the robbers off behind Messer's house and waited at a predetermined location to drive them away after the robbery was over.
 {¶ 16} Killing Messer was not a part of the plan, but when Messer went for his own firearm, Blake shot him in the head. Shooting Messer's wife was also not part of the plan. Nevertheless, she was shot by Blake.
 {¶ 17} After the robbery and killing, Blake ran with Brown to Hall's waiting car. Hall was informed of the killing. The three men went to Brown's house and split up the items stolen. *Page 5 
 {¶ 18} Sarah Parker lived with Brown at the time. She testified that Blake came to their residence and picked up Brown. The two men came back later, accompanied by Hall. Blake was extremely upset upon his return. The three men split up the proceeds of the robbery and told her what happened.
 {¶ 19} Robert Mills was a man who worked with Hall. He accompanied Hall during the drug sale earlier in the day. Mills had been to Messer's house on several occasions to buy and sell drugs. Mills was still with Hall when Hall picked up Blake and Hall and Blake began discussing the possibility of robbing Messer. Mills was still in the car both when Hall dropped off Blake and Brown to do the robbery and when Blake returned to the car with Brown following the robbery.
 {¶ 20} Jose Figuera was a cellmate of Hall's who claims Hall admitted his involvement in the robbery while the two were incarcerated together.
 {¶ 21} In the defense case, Hall testified that he worked with Mills at a painting job on the day of the robbery. He acknowledged his involvement in selling pills to Messer on the day of the robbery, but testified that he (Hall) parted company with Brown and Blake at a United Dairy Farmers store before the robbery occurred. He denied any part in the planning of the robbery and denied serving as a getaway driver. He also denied sharing in the proceeds of the robbery.
 {¶ 22} The testimony of Brown, Blake, Parker, and Figuera was more than sufficient to support the guilty verdicts from either a sufficiency perspective or a manifest weight of the evidence perspective.
 {¶ 23} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), *Page 6 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 24} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175); see alsoColumbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 25} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), *Page 7 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."State v. Nivens (May 28, 1996), 10th Dist. No. 95APA09-1236. It was within the province of the jury to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.")
 {¶ 26} See State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
 {¶ 27} Hall was clearly an accomplice in the robbery, burglary, felonious assault, and murder which took place. He helped plan the robbery. He drove the robbers to the scene of the crime, knowing one was going to use a firearm to rob a man who was known to be armed himself. The likelihood that shootings would occur was high. Hall was guilty of complicity in all the crimes.
 {¶ 28} Ohio case law also supports the applicability of a firearm specification to a person who assists other people who are known to be using a firearm to commit a crime of violence. See for instance,State v. Hanning, 89 Ohio St.3d 86, 92, 2000-Ohio-436, in which the Supreme Court of Ohio discussed whether an unarmed accomplice to a robbery may be sentenced to a mandatory three-year penalty enhancement for a firearm specification. The Hanning court concluded that the accomplice is subject to the three-year enhancement.
 {¶ 29} Under the circumstances, the firearm specification applies to Hall for his purposeful assistance of Blake in the commission of the robberies. *Page 8 
 {¶ 30} The single assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and CONNOR, JJ., concur. *Page 1