[Cite as *State v. Shabazz*, 2014-Ohio-1828.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100021

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DERRELL B. SHABAZZ

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART; VACATED IN PART;
### REMANDED FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-567946-B

**BEFORE:** Blackmon, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEY FOR APPELLANT**

Reuben J. Sheperd
11510 Buckeye Road
Cleveland, Ohio 44104


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Anna M. Faraglia
Kerry A. Sowul
Christopher D. Schroeder
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Derrell B. Shabazz ("Shabazz") appeals his convictions for aggravated murder, murder, felonious assault, and having a weapon while under disability. He assigns six errors for our review.[1]

{¶2} Having reviewed the record and pertinent law, we vacate Shabazz's convictions for aggravated murder, murder, felonious assault with a gun, and having a weapon while under disability; we affirm his sentence for two counts of felonious assault with a champagne bottle; we reverse and remand for resentencing. The apposite facts follow.

## Facts

{¶3} The Cuyahoga County Grand Jury jointly indicted Shabazz and his codefendants, Dajhon Walker ("Walker") and Otis Johnson ("Johnson"), for aggravated murder, murder, and three counts of felonious assault against Antwon Shannon. Shabazz, Walker, and Johnson were also indicted for one count of felonious assault against Ivor Anderson, and two counts of felonious assault against Eunique Worley. Shabazz was separately indicted for having a weapon while under disability. Prior to trial, Johnson entered a plea to one count of felonious assault and was placed on community control. Shabazz and Walker proceeded to a joint trial where the following evidence was presented.

{¶4} During the early morning hours of February 19, 2012, Shabazz, Walker, and Johnson were seen on a security camera entering the Tavo Martini Loft, a downtown

---

[1] Shabazz's codefendant, Dajhon Walker, also filed an appeal. *State v.*

Cleveland bar and lounge. The bar had security cameras that filmed various areas of the bar. The surveillance video shows the trio being patted down by security at 1:08 a.m. when they entered the bar. Once in the bar, the video shows Robert Steele[2] joining them.

{¶5} At 1:57 a.m., the surveillance video shows Robert Steele dancing and appearing to spill champagne on or near Ivor Anderson, who was at the bar with his friend Antwon Shannon, the victim who later died from a gunshot wound. There is no audio on the video, but it appears Anderson said something to Steele after the spill.

{¶6} Anderson testified at trial that Steele had spilled champagne on him while dancing. He told Steele, "You are doing too much." He clarified at trial that he meant he should not have been dancing with the champagne glass. According to Anderson, Steele rejoined Shabazz's group and began whispering to Johnson, Walker, and Shabazz. He said the men continued to watch him. Anderson testified he told Shannon to watch out for the group because he felt something was going to happen. Anderson stated that he did not know any of the men in the group.

{¶7} A review of the video does show the group looking in the direction of Anderson; however, they are also seen dancing and interacting with others. Also, Steele is not seen immediately going to the group, but continues to dance. When he eventually

*Walker*, 8th Dist. Cuyahoga No. 99998 (May 1, 2014).

[2]Steele's identity was unknown until the eighth day of Shabazz and Walker's trial. He entered a plea to one count of felonious assault and was sentenced to two years in prison.

stops dancing, he speaks to a female and an unknown male wearing a jacket. He then talks to Shabazz, Johnson, and Walker.

{¶8} Anderson testifies that about 15 minutes after Steele spilled the champagne, he turned his back to talk to a friend, Eunique Worley, when "Shabazz" hit him in the head with a champagne bottle. Worley testified that part of the bottle hit her in the head, but she did not see who hit her.

{¶9} Because the incident was captured by surveillance video, it is clear that Anderson was mistaken. Shabazz did not hit him with the champagne bottle, it was Steele. At 2:11 a.m., Steele is shown dancing near Anderson prior to swinging his arm with a bottle in Anderson's direction. During this time, Shabazz and Walker were on the fringe of the group.

{¶10} The surveillance video shows that after Steele swings the bottle, Steele and Anderson begin to fight and two females, who appeared to be with Johnson, immediately jumped on Anderson. Johnson is seen pulling Steele out from the fray, and the two females continue to beat Anderson. Shabazz is seen pacing on the fringe of the fight; however, when Walker hits Shannon with a bottle, Shabazz runs around the group and punches Shannon in the face.

{¶11} After Shabazz punches Shannon, Shabazz walks away. Walker is seen pulling an object from his waistband and running behind a pillar that is right next to the dance floor. The shot is eventually fired from behind this pillar. Before the shot is fired, Shabazz is not looking in Walker's direction and does not join him; instead, he walks

across the room towards Johnson and watches the women fighting with Anderson on the dance floor. This is fully seen on the surveillance video.

**{¶12}** After being punched by Shabazz, Shannon returns to the dance floor to again try to pull the women off of Anderson.[3] He successfully pulls one of the women off, and Anderson is then able to stand. Shabazz then runs up to Anderson and punches him in the face and then walks away from Anderson. One of the females jumps on Anderson and brings him to the floor by the pillar. The fight then spills over to the area next to the dance floor and pillar where Walker is standing. Because the fight has now proceeded to the area by the pillar, Shabazz is seen walking towards the pillar. As he does so, a shot is fired, as indicated on the video by a flash and dust falling from the ceiling.

**{¶13}** Before the shot is fired, the video shows Shannon move towards the pillar in an attempt to remove the women from on top of Anderson. Shannon bends over with his back towards the pillar and is shot in the lower back area. Thereafter, the crowd begins to run. On the video, Walker is seen running from behind the pillar after the shot is fired, and Shabazz joins him as they run out of the bar. Walker is seen fumbling with his pants, which the state argued showed him putting his gun in his waistband, although no weapon is visible.

**{¶14}** Shannon made his way to the bathroom. A medical student hiding in the bathroom saw Shannon and asked him if he was okay. Shannon lifted his shirt, and the

---

[3]In spite of the fact the women on the video were later identified, they were not indicted.

medical student saw blood. Shannon dropped to the ground, and the medical student attempted to help him until the EMS arrived. Shannon died in transit to the hospital.

{¶15} Anderson testified that when he gave his statement to police several days later, he told them he had "heard" that Shabazz was the one that shot Shannon. He also told police that he was 100% sure that Shabazz was the one that hit him with the champagne bottle, which the surveillance video contradicts.

{¶16} Officer Edens was called to the scene. He testified that one .45 shell casing was found on the dance floor. No weapon was recovered from the scene except for a gun found in Shannon's vehicle. Detective Diaz testified that Johnson, Walker, and Shabazz became persons of interest because their names were mentioned by witnesses. According to Diaz, Shabazz turned himself in to the police.

{¶17} The jury found Shabazz guilty of the following offenses against Antwon Shannon: aggravated murder, murder, and three counts of felonious assault. The jury also found Shabazz guilty of one count of felonious assault against Ivor Anderson. The jury found Shabazz not guilty of the two counts of felonious assault against Worley. The trial court separately concluded Shabazz was guilty of having a weapon while under disability.

{¶18} The trial court sentenced Shabazz to 20 years to life in prison for the aggravated murder, and merged all the other counts dealing with Shannon into this count. The court also sentenced Shabazz to two years in prison for the felonious assault against Anderson and nine months in prison for having a weapon while under disability. These

two sentences were to be served consecutive with each other, but concurrent with the aggravated murder term.[4]

## Insufficient Evidence and Manifest Weight

{¶19} We address Shabazz's fifth and sixth assigned errors together for ease of discussion.   Shabazz argues that the evidence was insufficient to support his convictions and that they were also against the manifest weight of the evidence.

{¶20} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶21} In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965.

1.  Aggravated Murder

---

[4]We note that the trial court failed to sentence Shabazz for the firearm specifications.  However, this does not render the judgment nonfinal. *Jones v. Ansted*, 131 Ohio St.3d 125, 2012-Ohio-109, 961 N.E.2d 192.

**{¶22}** Shabazz argues the evidence was insufficient to support an aggravated murder conviction because there was no evidence showing that he was part of a plan to murder Shannon.

**{¶23}** Aggravated murder pursuant to R.C. 2903.01(A), provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another[.]" Shabazz did not fire the gun; therefore, the state's case against Shabazz was predicated on his aiding and abetting Walker.

**{¶24}** R.C. 2923.03(A)(2) states that no person, "acting with the kind of culpability required for the commission of an offense" shall "[a]id or abet another in committing the offense[.]" A person aids or abets in a crime when the evidence shows that "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. Criminal intent "can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, citing *Johnson*, 93 Ohio St.3d at 245.

**{¶25}** Thus, the state must prove two criminal intents for the accomplice: first that the accomplice had the same criminal intent as the principal offender and, second, that the accomplice also intended to help the principal commit the offense. *State v. Mendoza*, 137 Ohio App.3d 336, 343, 2000-Ohio-1689, 738 N.E.2d 822 (3d Dist.) citing *State v.*

*Lockett*, 49 Ohio St.2d 48, 61-62, 358 N.E.2d 1062 (1976), *overruled on other grounds by Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

{¶26} This court in *State v. Walker*, 8th Dist. Cuyahoga No. 99998 (May 1, 2014), held that construing the evidence in the light most favorable to the state, the state failed to provide evidence that Walker's murder of Shannon was premeditated. In so holding, we held that the Ohio Supreme Court has provided the following factors to consider in determining whether prior calculation and design were proven:

> (1) Did the accused and the victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost spontaneous eruption of events?"

*State v. Taylor*, 78 Ohio St.3d 15, 19, 1997-Ohio-243, 676 N.E.2d 82.

{¶27} We then concluded in *Walker*:

> As to the first factor, there is no evidence in the record that Walker knew Shannon, let alone had a strained relationship. With respect to the second factor, the evidence fails to demonstrate that Walker gave thought in choosing the murder site. The state did not have any eyewitness testimony to the shooting, so it relied on the surveillance video to present its case. The surveillance video shows Anderson and others fighting on the dance floor. Shannon gets caught in the fight while he is trying to break it up. Walker walks behind a pillar, which is next to the dance floor. The video then shows the fight spilling over to the area by the pillar where Walker went behind. The fight could have just as easily spilled over into the other direction. Thus, Walker did not choose the murder site or pursue Shannon. Rather, the video shows that the murder site came to him instead.
>
> With respect to the third factor, we find that Walker's actions were the result of an almost spontaneous eruption of events. The evidence demonstrates that after the fight erupted, a group of people were tussling on the dance floor. The fight then happens to spill over to the area by the pillar where Walker was observed walking behind. Shannon is seen bent forward and one gunshot is fired at his back. The video fails to demonstrate that "the act was drawn out." Rather the video shows the entire sequence

of events, which happened within minutes, as a chaotic situation that spiraled out of control.

*Id.* at ¶ 18, 19.

**{¶28}** We agree with the *Walker* decision that the state failed to show evidence of prior calculation and design. This court stressed in *Walker* that it was not unusual for a group to stand together and converse while in a nightclub. *Id.* at ¶ 20. We agree. The video shows Shabazz, Walker, and Johnson looking at Shannon and Anderson, but they are also otherwise engaged with other people. They are seen talking to and hugging others during this supposed planning period. Although Anderson felt uneasy by the men talking and looking in his direction, more than dirty looks are necessary to prove the men were devising a plan to commit premeditated murder.

**{¶29}** We agree with the *Walker* decision that there was no evidence of prior calculation and design. Therefore, insufficient evidence was presented to support Shabazz's conviction for aggravated murder. The evidence was also insufficient because, as we will discuss further below, there was no evidence that Shabazz was aware that Walker had a gun. *State v. Scott*, 61 Ohio St.2d 155, 165, 400 N.E.2d 375 (1980), citing *State v. Lockett*, 49 Ohio St.2d 48, 358 N.E.2d 1062 (1976) ("a jury can infer an aider and abettor's purpose to kill where the facts show that the participants in a felony entered into a common design and either the aider or abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony or the felony and the manner of its accomplishment would be reasonably likely to produce death.")

2. Murder

**{¶30}** We also find no evidence to support the complicity to murder charge against Shabazz. For this count, Shabazz was indicted pursuant to the felony-murder provision in R.C. 2903.02(B). R.C. 2903.02(B) states:

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

The underlying act was felonious assault with a deadly weapon.

**{¶31}** Although the court in *Walker* found sufficient evidence that Walker murdered Shannon, we find no evidence that Shabazz aided and abetted Walker in the murder. There was no evidence that Shabazz was aware that Walker had a gun until the shot was fired. The men are seen on the security video being patted down upon entering the establishment, and there is no evidence what the men said or did prior to coming to the club that would indicate Walker had a weapon.

**{¶32}** The U.S. Supreme Court in *Rosemond v. United States*, 572 U.S. ___, 134 S.Ct. 1240,188 L.Ed.2d 248 (2014), recently addressed the issue of complicity when the principal offense is committed with a firearm. The facts in *Rosemond* were that Rosemond accompanied two codefendants to sell drugs to a designated purchaser. One of Rosemond's codefendants drove the car to the exchange. Instead of paying money in exchange for the drugs, the purchaser punched one of Rosemond's codefendants in the face and ran off. Someone in the car began shooting at the fleeing purchaser.

**{¶33}** Rosemond was indicted under the federal statute regarding using a gun while committing a drug trafficking offense.  Because it was undetermined who fired the gun, the government argued that Rosemond was the principal offender, but in the alternative argued he at least aided and abetted the crime.  The jury convicted Rosemond without indicating if it was for being the principal offender or for aiding and abetting.

**{¶34}** Rosemond appealed based on the jury instructions the court gave the jury on aiding and abetting.  The court instructed that the jury could convict Rosemond if "(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime."  *Id.* at 1244.  The Supreme Court found the instruction erroneous because it did not instruct the jury that it must find that the accomplice had knowledge that his codefendant had a gun in sufficient time to withdraw from the crime.  The Court held as follows:

> [D]efendant's knowledge of a firearm must be advance knowledge — or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice.  When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense.  But when the accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime.  And when that is so, the defendant has not shown the requisite

intent to assist a crime involving a gun. * * * For the reasons just given, we think that means knowledge at a time that the accomplice can do something with it — most notably, opt to walk away. (Emphasis sic.)

*Id.* at 1249.

{¶35} The dissent distinguishes *Rosemond* based on the fact the knowledge of the firearm was a necessary element to the federal drug trafficking offense at issue. However, Shabazz was indicted for felony-murder with the underlying offense of shooting Shannon with a firearm. Therefore, his "knowledge" of the firearm was necessary because "knowingly" is the mens rea for felonious assault. Felonious assault is defined as knowingly causing, or attempting to cause, physical harm to another by means of a deadly weapon. R.C. 2903.11(A). A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B). Here, without knowing that Walker had a weapon, Shabazz did not know that there was a risk that the death of one of the victims could result from the altercation.

{¶36} The dissent emphasizes that the use of the bottles by Shabazz's co-defendants was sufficient to support the felony-murder charge. However, Shabazz was expressly indicted for using a firearm in committing the felony-murder. Also, the bottle throwing was not the proximate cause of Shannon's death. Shannon continued to help Anderson after being hit, and security footage of Anderson outside of the club after the fight shows he is physically ready to continue fighting.

**{¶37}** Morever, the Supreme Court applied common law principles in discussing the "intent" needed for an accomplice. Additionally, a review of Ohio case law shows that foreknowledge of the gun has generally been applied in cases in which a defendant is found to be complicit in felony-murder with a firearm. *See also State v. Wynn*, 2d Dist. Montgomery No. 25097, 2014-Ohio-420 (evidence purporting to show that accomplice did not know that shooter had a gun would be relevant to whether he knowingly aided and abetted the shooter*;* however, evidence was presented gun was observable); *State v. Ayers*, 10th Dist. Franklin No. 13AP-18, 2013-Ohio-5601, ¶ 17 (witness heard the shooter ask the accomplice for a gun and was observed returning the gun to the accomplice after the shooting); *State v. Chatman*, 8th Dist. Cuyahoga No. 99508, 2013-Ohio-5245, ¶ 13, 14 (accomplice and shooter both had guns; shooter told the accomplice that he intended to shoot the victim); *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, ¶ 63 (accomplice operated car in manner to allow shooter better angle to shoot; shooter known to carry gun); *State v. Hall*, 10th Dist. Franklin Nos. 08AP-939 and 08AP-940, 2009-Ohio-2277 (accomplice helped plan the robbery and drove the robbers to the scene of the crime, knowing one was going to use a firearm to rob a man); *State v. Hudson*, 5th Dist. Stark No. 2007-CA-00176, 2009-Ohio-456 (accomplice supplied shooter with the gun); *State v. Hickman*, 5th Dist. Stark No. 2003-CA-00408, 2004-Ohio-6760 (accomplice present when shooter loaded the rifle).

**{¶38}** The dissent references the *Wynn* decision from the second district, cited above, to support the argument that knowledge of the gun by the accomplice is unnecessary. Showing that an accomplice "knowingly" engaged in the act with the same

intent as the principal is a prerequisite for the conviction of an accomplice to felony-murder. In *Wynn*, security footage is shown depicting the principal offender pointing a gun at the victim who is trying to get the gun away. According to the opinion, Wynn is seen punching the victim to stop him from getting the gun. In that case, the video alone was enough to convict Wynn as an accomplice because he obviously saw the gun and chose to continue to participate. The court held as follows regarding the court's failure to allow the defense to call Wynn's codefendant as a "court's witness":

> In addition, evidence purporting to show that Wynn did not know that Turner had a gun could also be relevant to whether Wynn knowingly aided and abetted Turner. However, our review of the video interview, which was proffered as Defense Exhibit A, indicates that Turner never told the police that Wynn was unaware that he (Turner) had a gun. In fact, Turner said during the video interview that he took his gun out of the car when the two men pulled up to the store and went inside. Turner also stated that he took his gun out of the car because he knew that Beans kept a gun. And finally, Turner indicated that he kept his gun on the side and that it was out (meaning it would have been visible to others, including Wynn). This testimony would not have assisted Wynn in proving his lack of knowledge that Turner had a gun.

*Id.* at ¶ 69. Thus, *Wynn* acknowledges the importance of knowledge of the weapon in order for the defendant to "knowingly" aid and abet in the crime of felony-murder with a firearm.

{¶39} There was absolutely no evidence that Shabazz was aware that Walker had a gun. The evidence, both direct and circumstantial, indicates that Shabazz would not have been aware of the gun until the gun was fired. There is absolutely no evidence upon which the jury could "infer" that he did have this knowledge. Although Walker is seen quickly pulling something from his waistband prior to going behind the pillar, Shabazz's attention is directed to the fight on the floor not Walker. Walker also puts his hand down by the side of his leg after reaching for the waistband. By the time the gun was shot, Shabazz had completed his participation in the fight. Moreover, given that the shot was fired from behind the pillar, it is debatable if Shabazz knew that Walker was the one that fired the shot. Thus, the evidence was insufficient to convict him as an accomplice to the murder.

{¶40} Although the dissent references a celebration outside the club, as did the prosecution in its brief, we found no evidence of this in our review of the surveillance footage of the outside of the club, and no testimony regarding the celebration was presented at trial. At oral argument, when the panel inquired where this footage appeared, the prosecution referred to where to look on the video. We reviewed the footage referenced by the state; our review showed people in the distance with no way of knowing who they were or what they were doing.

{¶41} Although the dissent disagrees, the video shows Shabazz participated by throwing two punches, one for each victim. Shannon resumed helping Anderson after being punched and Anderson remained standing after being punched until one of the females jumped on him. After each punch Shabazz retreated. Although we agree with

the dissent that Shannon's murder was tragic and senseless, the state should not be relieved of its burden because of this tragedy.

3.  Felonious Assault

{¶42} Given our above discussion, the felonious assault counts involving Shannon that have to do with a firearm are also vacated. This leaves two counts of felonious assault committed with a "champagne bottle."

{¶43} To convict Shabazz under these two counts, the state had to show that Shabazz "knowingly cause[d] or attempt[ed] to cause physical harm to" Shannon and Anderson "by means of a deadly weapon or dangerous ordnance, to wit: champagne bottle." The evidence does not show that Shabazz himself committed felonious assault with a bottle because Shabazz's actions consist of his punching each man once; therefore, the state had to present evidence that Shabazz aided and abetted the principal offenders.

{¶44} The video shows that after observing Anderson being hit in the head with a bottle, Shabazz chose to engage in the fight and, in fact, punched Anderson. Shabazz also punched Shannon after observing Walker hit him with a bottle. By joining in on the fight, he showed his encouragement and support of the principal offenders' actions. Thus, we cannot say he was not complicit in committing the two counts of felonious assault with a champagne bottle.

4.  Having a Weapon While under Disability

{¶45} Due to our discussion regarding the murder, we also conclude that Shabazz's conviction for having a weapon while under disability should be reversed. As

we stated, there is no evidence that Shabazz was aware that Walker had brought a gun. There was also no evidence that Shabazz had a gun.

{¶46} Shabazz also contends his convictions were against the manifest weight of the evidence because there was no evidence of a conspiracy. In doing so, he simply reiterates his arguments from his sufficiency of the evidence argument. But, because we found insufficient evidence to support his conviction, his manifest weight of the evidence argument is moot. *See* App.R. 12(A)(1)(c).

{¶47} Accordingly, we conclude that Shabazz's fifth assigned error has merit in part and is sustained in part and his sixth assigned error is moot. Shabazz's convictions for aggravated murder, murder, three counts of felonious assault with a firearm, and having a weapon while under disability are vacated. His two convictions for felonious assault with the champagne bottle are affirmed.

{¶48} The trial court has already sentenced Shabazz to two years in prison for the felonious assault of Anderson; however, the felonious assault of Shannon was merged with the aggravated murder count. Therefore, the matter must be remanded for the trial court to sentence him on the felonious assault of Shannon.

### Ineffective Assistance of Counsel

{¶49} In his first assigned error, Shabazz argues that his counsel was ineffective. To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will

only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶50} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.* at 694.

{¶51} Shabazz argues that counsel was ineffective for filing a motion to suppress "any testimony from [the] newly disclosed witness." The new witness was Robert Steele, the person seen on the video hitting Anderson on the head with the bottle. Shabazz argues that in Steele's statement to police, he stated that he had "acted alone" and "did not know anyone [at the bar] other than his cousin Otis Johnson." Shabazz argues these statements would have assisted him in defeating the state's theory that the men planned the assault upon the victims that ultimately led to Shannon's death.

{¶52} In its motion, counsel acknowledges that Steele told police he acted alone and only knew Johnson. Thus, in spite of Shabazz's contention otherwise, counsel did review the statement. In his motion, counsel's concern was that the police while interrogating Steele had made suggestive remarks to Steele about what was depicted on the video, which unduly influenced Steele to the point any testimony would be unreliable. Thus, counsel's refusal to have Steele testify was a tactical move because Steele's testimony might differ from his statement after hearing about the video from police. It is well-established that "counsel's decision whether to call a witness falls within the rubric

of trial strategy and will not be second-guessed by a reviewing court." *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 118.

{¶53} Moreover, we concluded in addressing Shabazz's fifth assigned error that the evidence did not support the state's allegation that the men premeditated the attack; therefore, Steele's statement he acted alone in deciding to hit Anderson with the bottle would not have mattered. We have found Shabazz is guilty of felonious assault not based on a plan, but based on his decision to participate in the fight each time one of the victims was hit with a bottle. Accordingly, Shabazz's first assigned error is overruled.

### Prosecutorial Misconduct

{¶54} In his second assigned error, Shabazz argues that the state committed prosecutorial misconduct by referring to evidence not substantiated by the record. Specifically, Shabazz argues that the prosecutor stated in closing argument that the video showed the men discussing and planning the attack and that Shabazz stayed away from the pillar because he knew that Walker had a gun.

{¶55} We conclude our resolution of Shabazz's fifth assigned error moots this assigned error. We have already concluded there was insufficient evidence that the men planned the crime and that there was no evidence that Shabazz knew that Walker had a gun. Accordingly, because it is moot, Shabazz's second assigned error is overruled.

### Jury Instructions

{¶56} In his third and fourth assigned errors, Shabazz challenges the trial court's instructions on flight, conspiracy, and complicity.

**{¶57}** In reviewing a trial court's jury instruction, the appellate court must affirm the trial court's instruction unless the instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989). Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist. 1984).

**{¶58}** In the instant case, the trial court instructed the jury as follows:

Testimony has been admitted indicating that the defendants fled the scene. You are instructed that the fact that any one or both of the defendants fled the scene does not raise presumption of guilt but it may tend to indicate the defendant's consciousness of guilt.

If you find that the facts do not support that any one or both of the defendants fled the scene, or if you find that some other motive prompted any one or both of the defendant[s'] conduct, or if you are unable to decide what any one or both of the defendant[s'] motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that any one or both of the defendants engaged in such conduct and if you decide that any one or both of the defendants was motivated by a consciousness of guilt, you may, but are not required to consider that evidence in deciding whether any one or both of the defendants is guilty of the crime charged. You alone will determine what weight, if any, to give to this evidence.

Tr. 1154-1155.

**{¶59}** The trial court instructed the jury that fleeing from "the scene does not raise a presumption of guilt but it may tend to indicate the defendants' consciousness of guilt."

Shabazz contends that the flight instruction was improper because everyone was running to get out of the bar once the gun was shot. He also argues that no police were at the scene when he left so there was no evidence he was avoiding apprehension.

{¶60} The Ohio Supreme Court has held that evidence of flight is admissible to show consciousness of guilt. *State v. Taylor,* 78 Ohio St.3d 15, 27, 676 N.E.2d 82 (1997). We find no abuse of discretion on the part of the trial court. Flight from justice "means some escape or affirmative attempt to avoid apprehension." *State v. Spraggins*, 8th Dist. Cuyahoga No. 99004, 2013-Ohio-2537, ¶ 24, citing *State v. Benjamin*, 8th Dist. Cuyahoga No. 80654, 2003-Ohio-281. It is not error for a trial court to give a flight instruction when there is such evidence. *Id*.

{¶61} As Shabazz points out, evidence was given at trial that he, along with everyone else, fled the scene. But the trial court informed the jury that it could determine from the evidence whether the defendant fled the scene for some other purpose. Thus, the jury could have decided whether Shabazz fled because he was trying to avoid the police or if he fled for safety reasons to avoid being shot. Therefore, we find no error in the flight instruction.

{¶62} Shabazz also contends the trial court should not have instructed the jury on complicity. However, as we discussed in Shabazz's fifth assigned error, there was sufficient evidence that Shabazz participated in the fight. Therefore, an instruction on complicity was proper.

**{¶63}** Shabazz also argues the trial court erred in instructing the jury on conspiracy. However, given our disposition of Shabazz's fifth assigned error, this error is moot. Accordingly, Shabazz's third and fourth assigned errors are overruled.

**{¶64}** Accordingly, we vacate Shabazz's aggravated murder, murder, felonious assault convictions related to a firearm, and weapons while under disability convictions. Shabazz's remaining convictions are affirmed and the matter remanded for resentencing on his conviction for felonious assault against Shannon.

It is ordered that appellant and the appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS
(WITH ATTACHED DISSENTING OPINION)


SEAN C. GALLAGHER, J., DISSENTING:

**{¶65}** I respectfully dissent from the holding and analysis of the majority opinion.

**{¶66}** This case is about a 27-year-old father of two who joined a friend at a club for a night out only to meet his untimely death. Although not directly relevant to our

analysis, Antwon Shannon, by all accounts, was completely innocent and did nothing to justify or bring about his own demise.

{¶67} There is no easy way to disagree with my respected colleagues, but disagree I must.

{¶68} I do not share the view that the evidence was insufficient to support Shabazz's convictions for aggravated murder under R.C. 2903.01(A) with attendant gun specifications and murder under R.C. 2903.02(B) also with attendant gun specifications. Likewise, I disagree with the majority view that the gun-related specifications involving Shabazz on his felonious assault convictions in Counts 3 and 5 are not supported by the evidence. I also disagree with the majority's reliance on the analysis in *State v. Walker*, 8th Dist. Cuyahoga No. 99998 (May 1, 2014), where that panel finds insufficient evidence to support the aggravated murder conviction under R.C. 2903.01(A) of the codefendant Walker. Lastly, I disagree with the majority's analysis of *Rosemond v. United States*, 572 U.S.____, 134 S.Ct. 1240, 188 L.Ed.2d 248 (2014), and its impact on this case. I would affirm in total the jury verdict and reject all of Shabazz's errors on appeal.

{¶69} The majority embraces the *Walker* panel's view that there is no evidence of prior calculation and design by Walker, and thus there is no evidence Shabazz had committed to a plan to kill Shannon. The majority bases much of its analysis on its judgment that Shabazz was unaware that Walker had a gun. I respectfully disagree with these conclusions.

**{¶70}** My disagreement with the majority opinion, and by implication the panel opinion in *Walker*, is the majority's focus on the direct evidence without giving what I consider proper consideration to the circumstantial evidence at play and the reasonable inferences that can be drawn from that evidence.

**{¶71}** In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court holds that no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The court must view the evidence in the light most favorable to the prosecution. *Id*. Whether the state presented sufficient evidence is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. I do not believe the majority view adheres to this requirement. The majority substitutes its interpretation of the inferences drawn from the circumstantial evidence, rather than accepting the inferences found by the trier of fact.

**{¶72}** The majority opinion accurately outlines the conduct of the respective participants. Nevertheless, the majority emphasizes what the majority's view of the evidence is (and primarily direct evidence at that) and not the reasonable inferences that were drawn from the circumstantial evidence by the jury. This is the essential difference between my view and the view of the majority.

1.  Felony Murder

**{¶73}** The majority vacates Shabazz's conviction on the basis that the felony murder count was predicated on Shabazz's knowledge of the firearm Walker used to

shoot Shannon. Shabazz's knowledge of the firearm is irrelevant to the felony murder charge, predicated on the felonious assault committed with the champagne bottles used as a deadly weapon as charged in the indictment.[5] "'Felony murder' under R.C. 2903.02(B) provides that '[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *.'" *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, ¶ 35-36.

> Under the "proximate cause theory," it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. [A] defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.

*Id.* at ¶ 35, quoting *State v. Ervin*, 8th Dist. Cuyahoga No. 87333, 2006-Ohio-4498.

{¶74} As this court further recognized, "for criminal conduct to constitute the 'proximate cause' of a result, the conduct must have (1) caused the result, in that but for the conduct the result would not have occurred, and (2) the result must have been foreseeable." *Id.* at ¶ 36, citing *State v. Muntaser*, 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, ¶ 38. Foreseeability, in turn,

---

[5]It appears the majority considers the firearm specifications as controlling which count of felonious assault is the predicate felony offense underlying the felony-murder count, the felonious assault with the firearm or the felonious assault with the bottle. The specifications, however, serve to enhance the penalty, and the felony-murder count can be proven independent of the firearm specifications.

is determined from the perspective of what the defendant knew or should have known, when viewed in light of ordinary experience. It is not necessary that the defendant be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by the defendant.

*Id.* In this case, Shabazz knowingly participated in the felonious assault of Anderson and Shannon with bottles used as deadly weapons. Death was a foreseeable consequence of either of those felonious assault charges, and the attacks on both victims culminated in the murder of Shannon. It is undisputed that Shabazz participated in the orchestrated attacks on the victims, knowing that bottles were used as weapons and the attacks resulted in Shannon's death. The death of Shannon was within the scope of the risk created by Shabazz through the felonious assault, and therefore, the fact that the death in this case was actually caused by Walker is irrelevant to the felony murder analysis. Shabazz's conviction for felony murder is not against the sufficiency of the evidence.

2. Complicity to Commit Murder

**{¶75}** In regard to the murder charges, as noted in *State v. Moore*, 7th Dist. Mahoning No. O2 CA 152, 2004-Ohio-2320, ¶ 31,

"the state does not need to prove that the accomplice and principal had a specific plan to commit a crime." [*State v. Johnson*, 93 Ohio St.3d 240, 245, 2001-Ohio-1336, 754 N.E.2d 796.] The fact that the defendant shares the criminal intent of the principal may be inferred from the circumstances surrounding the crime, which may include the defendant's presence, companionship, and conduct before and after the offense is committed. *Id.*

at 245-246. This is a situation where "circumstantial evidence and direct evidence inherently possess the same probative value," *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus, because "the intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be." *In re Washington*, 81 Ohio St.3d 337, 340, 1998-Ohio-627, 691 N.E.2d 285, quoting *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313, paragraph four of the syllabus.

{¶76} "A person is guilty of complicity if that person aids or abets another in committing an offense while acting with the kind of culpability required for the commission of an offense." *Moore* at ¶ 26, citing R.C. 2923.03(A)(2).

"To 'aid' is to assist and to 'abet' is to incite or encourage. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting the act. * * * [I]n order to aid or abet, whether by words, acts, encouragement, support, or presence, there must be something more than a failure to object unless one is under a legal duty to object.

"The state may demonstrate that an accused is guilty of aiding and abetting by direct or circumstantial evidence. Participation in criminal intent may be inferred from presence, companionship, and conduct before, and after the offense is committed."

*State v. Mendoza*, 137 Ohio App.3d 336, 342, 2000-Ohio-1689, 738 N.E.2d 822 (3d Dist.), quoting *State v. Stepp*, 117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342 (4th Dist.1997).

{¶77} Although the majority asserts that it is not unusual for a group to stand together and converse while in a nightclub, that supposed innocent gathering takes a different tone, as here, when the conversation occurs immediately after an incident involving a spilled drink and the party who had that drink spilled on him warns his friend that the rival group is watching him and he senses something is going to happen. As evident through the video evidence, while the party was "innocently" conversing, they repeatedly focused their attention in the direction of Anderson and Shannon. The video makes clear that Shabazz and his compatriots are gazing in the direction of the impending attack over a period of several minutes. Anderson's fear of reprisal became a reality. When Anderson is struck with a champagne bottle, what followed was an orchestrated attack on Anderson and Shannon by members of this conversing group, culminating with Shabazz, not only participating in the brutal attack that involved bottles being wielded as deadly weapons, but walking over to Walker as Walker drew a gun and fired the death shot. That Shannon's death came about through the firearm, rather than a blow to the head by one of the bottle-wielding perpetrators of this senseless crime, should not alter the legal analysis. The jury is entitled to disregard any inference that these conversations were innocent, to conclude that the attack was orchestrated to severely hurt Anderson and Shannon, if not kill either of them, and to determine that Shabazz

demonstrated complicity by running out with Walker as he placed the gun back into his waistband. The facts, and reasonable inferences therein, support the jury's conclusion.

{¶78} The majority also notes that there was no audio recording on the video, suggesting the purposeful intent and prior calculation and design had to be recorded to be proven. Few crimes are recorded by audio or video. The absence of one or both does not mean the conduct of the parties cannot be examined to establish the intent or culpability of the respective participants. That is the role of the trier of fact. Significantly, idle conversation and innocuous dancing between the initial confrontation and the assault as described by the majority does not diminish the actual conduct that plays out with the concerted attack on Anderson and Shannon. The jury was well within its province to infer a plan of attack was in play, including one involving not only serious physical harm, but a purposeful intent to kill, given the subsequent conduct of those involved and their collective decision to use bottles as weapons to attack the defenseless.

{¶79} A person is guilty of complicity when he acts with the kind of culpability required for the commission of an offense and aids and abets or conspires to commit the offense. R.C. 2923.03(A)(2) and (3). As the Ohio Supreme Court explained in *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus, this means that the aider and abettor must share the criminal intent of the principal. The circumstances of Shabazz and Walker arriving together, plotting with Steele and Johnson after the drink spill, remaining together in relative proximity during events, participating in the attack, leaving together after the shooting with Walker placing what appears to be an object into his front waistband, and the celebratory act in the parking lot could all be considered by

the jury in examining Shabazz's knowledge of the intent to kill Shannon. The majority may see this as "inference stacking," but it is actually a series of independent facts that can be taken together by the jury to reach an acceptable inference and the conclusion that Shabazz knew Walker was armed.

{¶80} In short, Shabazz's culpability is not defined as an aider and abettor solely from events leading up to the shooting, but also by his conduct during and immediately after the act. Aiding and abetting encompasses conduct before, during, and after the crime. Certainly the jury could establish that this was an orchestrated attack and that Shabazz had the same criminal intent and culpability for the crimes as Walker.


3. Prior Calculation and Design

{¶81} While the majority adopts the finding of the Walker panel that there was no prior calculation and design by Walker, and by implication Shabazz, the facts in the case can be interpreted differently. Simply put, the jury in this case saw it differently than the majority sees it here.

{¶82} Under R.C. 2903.01(A), aggravated murder, no person shall purposely, and with prior calculation and design, cause the death of another. Accordingly, to find a defendant guilty of murder under this provision, the trier of fact would have to conclude that the defendant purposely, and with prior calculation and design, caused the death of the victim. A person acts "purposely" when it is his specific intention to cause a certain result. R.C. 2901.22(A).

"Prior calculation and design" is "indicated [by] studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." While "neither the degree of care nor the length of time * * * are critical factors in themselves, * * * they must amount to more than momentary deliberation." * * * "If the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation and design." (Citations omitted.)

*State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶ 24, quoting *State v. Taylor*, 78 Ohio St.3d 15, 19, 1997-Ohio-243, 676 N.E.2d 82, and *State v. Hough*, 8th Dist. Cuyahoga No. 91691, 2010-Ohio-2770, ¶ 19.

{¶83} The jury was free to infer from the conversations involving Shabazz and the others that the group was going to exact retribution for Anderson making a comment after the drink was spilled on him. This reasonably included causing not only serious physical harm, but also the purposeful intent to kill. This fact is inferred by the subsequent conduct of Steele, Johnson, Shabazz, and Walker. This was no bar fight. This was a vicious, premeditated attack. The planning, followed by the orchestrated use of a multitude of deadly weapons in the form of champagne bottles by multiple participants, coupled with others like Shabazz offering direct physical support in the attack, was sufficient to establish not only the required purposeful intent for murder, but also the prior calculation and design for aggravated murder. The fact that the murder actually involved a handgun, rather than a champagne bottle, does not diminish the criminal intent established by the conduct prior to the shooting.

**{¶84}** I recognize the majority does not share this view of Shabazz's intent, but that is the majority's perspective, not the perspective of the jury. Steele initially acts with a level of culpability embracing both serious physical harm and purposeful murder in violently swinging a bottle at the back of the head of a defenseless man. The conspirators meeting and conversing immediately preceding this event and then joining in the attack immediately after Steele initiates the assault are sufficient grounds to establish prior calculation and design. The culpability and level of criminal intent is ultimately shared by those who subsequently join in the attack as aider and abettors.

**{¶85}** There is little doubt that Walker specifically intended to kill Shannon. He shot him in the back. He was not responding to an immediate threat against his person or instinctively reacting to an event. The *Walker* panel found, and the majority here embraced, the view that because Walker did not previously know Shannon, one of the factors of prior calculation and design was not met. I disagree. Simply because someone does not know another individual in advance does not mean he cannot plan to kill them. Walker was certainly aware that he had a loaded weapon on his person when these events unfolded. Between the time that Steele initially conversed with Walker, Johnson, and Shabazz, more than 12 minutes elapsed for all parties involved to gain a sense of what was evolving. Once Anderson was struck with the champagne bottle, events rapidly spiraled out of control, but Walker was well aware of his armed status and clearly made a conscious decision to fire his weapon and shoot Shannon. I disagree with the view expressed in *Walker* and adopted by this majority that in doing so Walker did not "choose the murder site." That view ignores the reality that Steele, Johnson, Shabazz,

and Walker initiated this orchestrated attack. Likewise, the majority's adopting the *Walker* panel's description of events as happening in a spontaneous manner ignores the interlude between Anderson and Steele's initial encounter and the subsequent turmoil and Walker's shooting of Shannon.

{¶86} Lastly, the majority incorrectly relies on the Supreme Court's decision in *Rosemond*, 572 U.S.___, 134 S.Ct. 1240, 188 L.Ed.2d 248. The majority interprets *Rosemond* as requiring advanced knowledge of the firearm from evidence limited to events prior to the crime in order to convict Shabazz as an aider and abettor to the murder. In *Rosemond*, however, the drug trafficking with a firearm crime included an element of having or using a firearm, and the erroneous jury instruction stated that the defendant knew his cohort "used" a firearm in the commission of the drug trafficking offense. The Supreme Court reversed because the instruction incorrectly had the jury consider the defendant's contemporaneous knowledge of the use of a firearm rather than whether the defendant knew in advance that his cohort would be armed while committing the drug trafficking offense. Knowledge of the use or carrying of a firearm was an element of the offense in *Rosemond*, and that case is simply inapplicable. Knowledge of a firearm is not an element of the felony-murder charge, predicated on the felonious assault with the bottle.

{¶87} In fact, in *State v. Wynn*, 2d Dist. Montgomery No. 25097, 2014-Ohio-420, ¶ 69 cited by the majority, the court noted that the lack of knowledge of a gun was merely evidence purporting to demonstrate whether the defendant knowingly aided and abetted the principal actor. Even that court recognized that the lack of knowledge is evidence

disproving complicity, but it is not in and of itself dispositive of the issue. In this case, while the majority concludes that Shabazz was unaware of the weapon, there is ample evidence supporting the fact that Shabazz was complicit in the murder through his actions in participating in the orchestrated attack on Anderson and Shannon with the bottles used as deadly weapons. Knowledge of the firearm would be icing on the state's case.

{¶88} For the foregoing reasons, I respectfully dissent.

## APPENDIX

Assignments of Error

I. Appellant was denied effective assistance of counsel in violation of the sixth amendment to the constitution of the United States and Article I, Section 10 of the Constitution of the State of Ohio.

II. The state's closing arguments contained statements that went beyond the record and were not substantiated by the evidence and therefore constituted prejudicial misconduct that violated appellant's right to due process.

III. The trial court erred in instructing the jury on defendant's flight.

IV. The trial court erred in instructing the jury on conspiracy and complicity.

V. The trial court erred in failing to grant the appellant's motion for acquittal pursuant to Criminal Rule 29 as the evidence presented by the state at trial was insufficient to prove the elements of the offense.

VI. The verdict was against the manifest weight of the evidence.